# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **Robert Hayden,** | : | |
| | : | |
| Plaintiff, | : | |
| | : | Civil Action No.:  3:18-CV-01164 (RNC) |
| v. | : | |
| | : | |
| **City of New Haven,** | : | |
| | : | November 8, 2018 |
| Defendant. | : | |
| | : | |
| | : | |

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS
## BY DEFENDANTS THE CITY OF NEW HAVEN AND CHIEF ANTHONY CAMPBELL

I.    INTRODUCTION ............................................................................................ 1

II.    RELEVANT ALLEGATIONS OF THE AMENDED COMPLAINT ............................ 2

III.   LEGAL STANDARD.................................................................................... 5

IV.   ARGUMENT............................................................................................. 6

    A.    COUNT TWO:  Retaliation Under Section 1983 Against Police Chief
        Anthony Campbell ................................................................................ 6

        1.    Speech Made as an Employee Related to His Duties Rather Than
            as a  Citizen on a Matter of Public Concern is Not Subject to First
            Amendment Protections........................................................... 6

        2.    The Speech Plaintiff Alleges Was as an Employee Pursuant to His
            Official Duties and Not as a Member of the Public on a Matter of
            Public Concern...................................................................... 9

    B.    COUNT ONE:  Conn. Gen. Stat. § 31-51q Against the City of New Haven ...... 12

        1.    Conn. Gen. Stat. § 31-51q Protects Employees From Discipline or
            Discharge for Exercising Free Speech Rights Under the U.S.
            Constitution or the Connecticut Constitution ......................................... 12

            a.    To the Extent That Plaintiff's Section 31-51q Claim Relies on
                Alleged Violations of the First Amendment of the U.S.
                Constitution,   Such Claims Must Be Dismissed Because
                Plaintiff Was Not Speaking as a Citizen on a Matter of Public
                Concern...................................................................13

            b.    To the Extent That Plaintiff's Section 31-51q Claim Relies on
                Alleged Violations of the State Constitution, Such Claims Must
                be Dismissed Under the Modified *Connick-Pickering* Test for
                Employee/Citizen Speech..........................................13

    C.    COUNT THREE:  42 U.S.C. § 1983 (Hostile Work Environment) Against
        Police Chief Anthony Campbell .............................................................. 14

        1.    Count Three Fails to State a Claim on the Iqbal Twombly Pleading
            Standard ............................................................................. 15

         2.    Even if Plaintiff Had Alleged Conclusorily a Hostile Work
            Environment Based on Race, Count Three Should Be Dismissed
            Because He Presents No Facts That Could Rise to the Level of a
            Racially Hostile Work Environment........................................ 16

D.    COUNT FIVE: 42 U.S.C. § 1983 (Race Discrimination) Against Police Chief Anthony Campbell ................................................................................... 19

        1.    Plaintiff's Alleged "Transfer" Was Not an Adverse Action.................... 20

        2.    Plaintiff's Discipline Has No Plausible Connection to Race................... 22

V.    CONCLUSION.................................................................................................... 23

# I.   INTRODUCTION

Defendants the City of New Haven and Chief Anthony Campbell hereby file their Memorandum of Law in Support of Motion to Dismiss directed to Counts One, Two, Three, and Five of the Second Amended Complaint dated September 30, 2018 ("Amended Complaint").[1] Plaintiff initiated this action by way of a July 13, 2018 Complaint against the City of New Haven (the "City"), Police Chief Anthony Campbell ("Chief Campbell"), and Sergeant Dennis Burgh ("Sergeant Burgh").   The present motion is being filed by the City and Chief Campbell and addresses the Second Amended Complaint.

Plaintiff, who is currently employed as a New Haven police officer, alleges in this case that the City violated his rights under Connecticut General Statues § 31-51q by disciplining him for his alleged speech about how extra duty assignments had been given to certain police officers within the Department of Police Services.  The City moves to dismiss Count One for failure to state a claim upon which relief may be granted, because the speech Plaintiff alleges was made in his role as a City employee and not on a matter of public concern, since it focused on whether the private Collective Bargaining Agreement between the City and the Elm City Local of CT Alliance of City Police (the "CBA") was being adhered to.

In Count Two, Plaintiff alleges a Section 1983 violation against Police Chief Anthony Campbell for allegedly retaliating against Plaintiff for exercising his rights under the First Amendment.  Defendant Campbell moves to dismiss Count Two for failure to state a claim upon which relief may be granted, because Plaintiff cannot satisfy the pleading requirements to

---

[1]   Plaintiff has also alleged a common law assault and battery claim against Sergeant Burgh in Count Four that is not a subject of the present motion.

establish a violation of the First Amendment. Plaintiff's allegations make clear that his speech was as an employee and therefore not protected under *Garcetti v. Ceballos*, 547 U.S. 410 (2006) Thus, Count Two also fails because Plaintiff was not speaking on a matter of public concern.

In Count Three, Plaintiff alleges another Section 1983 claim against Police Chief Anthony Campbell, this one for a "hostile work environment." Defendant Campbell moves to dismiss Count Three because this count fails to satisfy the pleading requirements for a 1983 claim of hostile work environment. A hostile work environment under 1983 requires a protected characteristic, that this count does not allege facts that would support a hostile work environment related to a protected characteristic such as Plaintiff's race.

Finally, in Count Five, Plaintiff alleges a third Section 1983 against Police Chief Campbell, this one based on alleged race discrimination. Defendant Campbell moves to dismiss Count Five for failure to state a claim upon which relief may be granted, because Plaintiff has not adequately pled a plausible race discrimination claim under Section 1983.

## II. RELEVANT ALLEGATIONS OF THE AMENDED COMPLAINT

Plaintiff is a current employee of the City and has been a police officer since 2002. Compl. ¶ 4. Based on the allegations in the Amended Complaint, on May 22, 2016, he was transferred to the "extra duty unit" where he became responsible for assigning extra duty police officer jobs. *Id.* ¶¶ 8, 9. Plaintiff alleges that extra duty assignments, such as work for the traffic division or at bars, were paid at the overtime rate of pay and therefore were very desirable. *Id.* ¶¶ 9, 10. In early 2016, he alleges that certain officers were earning large amounts from extra duty work. *Id.* ¶ 11. He claims that, following an investigation, Plaintiff's predecessor Dennis Mastriano was removed from the position of assigning extra duty work. *Id.* ¶¶ 11, 12. According to the Amended Complaint, Plaintiff was then assigned to manage the extra duty

work unit, and in so doing, he "determined that there were inequities in the manner in which `extra duty' assignments were being made." Id. ¶¶ 12, 13, 15.

Plaintiff's main claim, throughout the Amended Complaint, is that there were "inequities" in the way extra duty was being assigned and that certain officers were being given "favored treatment" in the way extra duty was assigned, contrary to "the practice" of the department. *Id.* ¶¶ 16, 19. He also alleges that one particular sergeant, Mark O'Neill, to whom Plaintiff reported, "was receiving unauthorized jobs in violation of the contract . . . . ." *Id.* ¶¶ 21, 22.

Plaintiff claims that as soon as he took over the job of assigning extra duty shifts and told officers "that they were not getting unauthorized jobs, they began to attack him." *Id.* ¶ 23. The alleged "attacks" consisted of "remov[ing] extra duty pages from the extra duty book"; Sergeant O'Neill "telling officers to file complaints regarding the extra duty assignments in retaliation for his own loss of extra duty assignments"; two sergeants "request[ing] Plaintiff's computer password" and "[w]hen he refused to give it to them they became angry and tried to force Plaintiff to give it to them"; Sergeant Dennis Burgh telling him he'd better "hire [him] for eight (8) hours" or there would be trouble; Sergeant Burgh "intentionally brush[ing] up against him forcing him to try to maintain his balance"; Sergeant Burgh telling him he must assign Burgh an extra duty assignment at Gateway Community College "whenever he wanted the assignment"; and "others in the unit" "harassing" him in unspecified ways when he equitably distributed the extra duty work. *Id.* ¶¶ 24, 26, 27, 29, 30, 34, 37.

Plaintiff's Amended Complaint further states that on September 27, 2016 he was informed by Asst. Chief Generoso that he was going to be removed from the extra duty assignment effective October 16, 2016 because it was "just not working out." Id. ¶ 47. Plaintiff

3

alleges that he responded that "it was not his desire to be transferred out of the extra duty unit" and that "only minority officers/supervisors had been transferred out of the unit." *Id.* ¶ 47. He claims that he, two other black officers, and one white sergeant (Sergeant O'Neill) were transferred out of the extra duty assignment at about the same time. *Id.* ¶48. He asserts that Sergeant O'Neill was eventually transferred back in to the extra duty unit "when the union fought for his return." *Id.* ¶ 51.

According to the Amended Complaint, Plaintiff spoke to people on the Board of Police Commissioners and "multiple people within the Department" about his belief that extra duty assignments had not been properly assigned under his predecessor. *Id.* ¶ 54. He alleges that he also complained to Police Chief Campbell that a sergeant had rescinded a previously approved day that he wanted to take off, and that Sergeants O'Neill and Bullock had "verbally and physically assaulted him." *Id.* ¶¶ 52, 53, 59. He does not claim that he complained to anyone outside the City until he filed his complaint with the Connecticut Commission on Human Rights and Opportunities[2] ("CHRO"). *Id.* ¶ 61. That complaint, according to Plaintiff, alleged that "African-American employees in the extra duty unit were discriminatorily removed from their positions"; the complaint was dismissed by the CHRO. *Id.* ¶ 61.

According to the Amended Complaint, an Internal Affairs investigation was opened concerning Plaintiff's brief assignment to the extra duty unit. *Id.* ¶ 63. Plaintiff alleges that the investigation concluded "that Plaintiff had violated standard operating procedures and the union contract regarding extra duty work assignments" and that Plaintiff has lowered morale among officers in the department. *Id.* ¶¶ 63, 64. He states that he was accused of crossing out the names of individuals on the extra duty list "to give extra duty assignments to whom he wanted."

---

[2] Plaintiff does not offer any date for when he filed a complaint with the CHRO. A copy of the filing is attached as Exhibit A and clearly shows that Plaintiff did not file the complaint with the CHRO until May 18, 2018.

*Id.* ¶ 74. He was given at 15-day unpaid suspension, which is the event upon which he bases his claim of damages. *Id.* ¶¶ 67, 77. He also claims that in April of 2018, a second internal investigation was commenced related to his role in the arrest of a suspect, in which Plaintiff had been accused by a member of the public of "neglect of duty." *Id.* ¶¶ 70, 71. For several rules violations in connection with this arrest, Plaintiff was given a 10-day suspension. *Id.* ¶ 79. He claims both complaints were not because of his own misbehavior and work deficiencies but were "a direct result of his strict adherence to the standard operating procedures for the assignment of extra duty work." *Id.* ¶¶ 66, 73.

## III. LEGAL STANDARD

In deciding a motion to dismiss made under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must determine whether the plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 559 U.S. 544, 570 (2007). The Court is to accept all factual allegations of the complaint — but not conclusory allegations. *Id.* at 572. To survive a Rule 12(b)(6) motion to dismiss, a cause of action must be supported by enough facts to state a claim for relief that is plausible on its face. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Twombly*, 550 U.S. at 570. While Rule 8 does not require detailed factual allegations, "[a] pleading that offers labels and conclusions or formulaic recitations of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (citations and internal quotations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

In general, the Court's review on a motion to dismiss pursuant to Rule 12(b)(6) "is limited to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007).

## IV.     ARGUMENT

### A.     COUNT TWO: Retaliation Under Section 1983 Against Police Chief Anthony Campbell

#### 1.     Speech Made as an Employee Related to His Duties Rather Than as a Citizen on a Matter of Public Concern is Not Subject to First Amendment Protections

42 U.S.C. § 1983 provides that every "person" who, under color of any statute, ordinance, regulation, custom or usage of any State subjects, or "causes to be subjected," any person to the deprivation of any federally protected rights, privileges, or immunities shall be civilly liable to the injured party.  In Count Two, Plaintiff claims that the City "retaliated against [him] for having exercised rights protected by the First Amendment to the United States Constitution and by Article First, Sections Three, Four and Fourteen, of the Connecticut Constitution." Compl. ¶ 81.

The First Amendment to the United State Constitution[3] states that Congress shall make no law abridging the freedom of speech.  Amendment I, U.S. Constitution.  In *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006), the United States Supreme Court considered the limitations on an employer's right to discipline employees in the workplace based on their speech, in light of First Amendment protections.  In *Garcetti*, the Court firmly established that "when . . . employees make statements pursuant to their official duties, the employees are *not* speaking as

---

[3]  Since Section 1983 only applies to **federally** protected rights, any violation of the Connecticut constitution cannot form the basis for a violation under 42 U.S.C. § 1983.

citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Id.* (emphasis added). Thus, in order to state a First Amendment free speech claim, an employee must first demonstrate that his speech was as a citizen involving a matter of public concern, which must be determined by the "content, form and context of a given statement." *City of San Diego, California v. Roe*, 543 U.S. 77, 82-83 (2004) (quoting *Connick v. Myers*, 461 U.S. 138, 146-147(1983)); *see also Garcetti*, 547 U.S. at 415-416 (holding that the first line of inquiry requires determining whether the employee spoke as a citizen on a matter of public concern). In addition, a plaintiff claiming a violation of the First Amendment must demonstrate that the alleged adverse employment action was caused by the exercise of constitutionally protected First Amendment freedoms. *See Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 286-287 (1977).

To determine whether the motion to dismiss Count Two should be granted, the Court should first determine, based on the factual allegations of the Amended Complaint, whether the Plaintiff's alleged speech was as a citizen on a matter of public concern. *See Garcetti*, 547 U.S. at 418. "If the answer is no, the employee has no First Amendment cause of action based on his or her employer's reaction to the speech." *Id.* (citing *Connick*, 461 U.S. at 146-147). The controlling factor in this inquiry is whether the employee's statements were made pursuant to the employee's official duties. *Garcetti*, 547 U.S. at 421. "[W]hen public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Id.* "[T]he speech at issue does not merit the protection of the First Amendment if the speech owed its existence to the plaintiff's job duties and was made in furtherance of those duties." *Gwozdz v. Genesis Physician Servs.*, No. 13-cv-317 (AWT), 2014

WL 943116, at *2 (D. Conn. Mar. 11, 2014).

As the U.S. Supreme Court stated in *Garcetti*,

Two inquiries guide interpretation of the constitutional protections accorded public employee speech. The first requires determining whether the employee spoke as a citizen on a matter of public concern. If the answer is no, the employee has no *First Amendment* cause of action based on the employer's reaction to the speech. If the answer is yes, the possibility of a First Amendment claim arises. The question becomes whether the government employer had an adequate justification for treating the employee differently from any other member of the general public. This consideration reflects the importance of the relationship between the speaker's expressions and employment. Without a significant degree of control over its employees' words and actions, a government employer would have little chance to provide public services efficiently. Thus a government entity has broader discretion to restrict speech when it acts in its employer role, *but the restrictions it imposes must be directed at speech that has some potential to affect its operations.* (citations omitted, emphasis added)

*Garcetti*, 547 U.S. at 410-411.

The plaintiff in *Garcetti* was a lawyer and calendar deputy in the Los Angeles County District Attorney's office. He brought an action against his superiors for retaliation based on an internal memorandum he wrote recommending dismissal of an ongoing prosecution for what he perceived to be errors in the related warrant affidavit. *Id.* at 413. As the calendar deputy, part of the plaintiff's job was to investigate aspects of pending cases. *Id.* at 411. ("Ceballos wrote his disposition memo because that is part of what he, as a calendar deputy, was employed to do."). *Id.* at 421 Following his investigation, Mr. Ceballos recommended that the case be dismissed, but his recommendation was rejected and he claimed that he was retaliated against thereafter based on his memorandum recommending dismissal. *Id.* at 414-415.

In holding that the memorandum was not protected First Amendment speech, the U.S. Supreme Court noted that neither Mr. Ceballos's audience nor the subject matter of his speech were dispositive factors in its decision. *Id.* at 421. Instead, the Court held that "[t]he controlling factor in Ceballos' case" was that Mr. Ceballos had not spoken as a citizen in writing the memo.

*Id.* Rather, "his expressions were made pursuant to his duties as a calendar deputy." *Id.*

> Ceballos did not act as a citizen when he went about conducting his daily professional activities, such as supervising attorneys, investigating charges, and preparing filings. In the same way he did not speak as a citizen by writing a memo that addressed the proper disposition of a pending criminal case. When he went to work and performed the tasks he was paid to perform, Ceballos acted as a government employee. The fact that his duties sometimes required him to speak or write does not mean his supervisors were prohibited from evaluating his performance.

*Id.* at 422. Mr. Ceballos' speech was commissioned by his employment and therefore his employer was entitled to control it.

> The significant point is that the memo was written pursuant to Ceballos' official duties. Restricting speech that owes its existence to a public employee's professional responsibilities does not infringe any liberties the employee might have enjoyed as a private citizen. It simply reflects the exercise of employer control over what the employer itself has commissioned or created.

*Id.* at 421.

### 2. The Speech Plaintiff Alleges Was as an Employee Pursuant to His Official Duties and Not as a Member of the Public on a Matter of Public Concern

"[I]t is within the province of the trial court to determine, as a matter of law, which topics are considered to be of public concern." *Daley v. Aetna Life & Casualty, Co.,* 249 Conn. 766, 782 (1999). Here, Plaintiff claims that he was assigned to the extra duty unit and part of his duties were to assign work in accordance with the CBA. He further claims that he was assigned to "manage the extra duty work unit" and that **the "intent of [his] assignment" was to ascertain the cause of what appeared to be excessive payments of wages under his predecessor** and to "clean up the situation in the unit." *Id.* ¶¶ 14, 18, 57. He claims he was retaliated against for doing what he was assigned to do, i.e., telling his fellow officers he would allocate extra duty work in accordance with the CBA and reporting his belief that his predecessor had assigned work based on favoritism. Compl. ¶¶ 54, 66, 73. Thus, on the face of the Complaint and based

upon his own allegations, there is no question that the speech which Plaintiff alleges caused the alleged retaliation was pursuant to his official duties and that he was not speaking as a citizen on a matter of public concern. *See Garcetti*, 547 U.S. at 415. "If the speech is required by the job, the public employee loses his status as a citizen with [f]irst [a]mendment protection against employer discipline...This is so even if the speech has the highest first amendment value because it involves a matter of great public concern, and even if the speech imposed little burden on the employer's legitimate interests." *Trusz v. UBS Realty Investors*, 319 Conn. 175, 201 (2015); *see also Davis v. McKinney*, 518 F.3d 304, 315-16 (5th Cir. 2008) (employee's speech to supervisor expressing concerns about inadequate response to investigation into fellow employees' use of workplace computer to access pornography, possibly including child pornography, was not protected from employer discipline under *Garcetti*); *Morales v. Jones*, 494 F.3d 590, 593-94, 597 (7th Cir. 2007) (police officer's statement to fellow officer that deputy police chief had harbored felon was not protected speech, because first police officer had duty to apprise second officer of information pertinent to investigation).

Here, in fact, Plaintiff's alleged speech about whether certain officers were being assigned extra duty in a manner inconsistent with the terms of the CBA is speech *solely related to*, and learned from, his work in that unit and in furtherance of what he himself alleges he was assigned to do.[4] Moreover, the speech he alleges had the potential to affect his employer's operations, because he was complaining about how his department assigned extra duty work. Nothing in the Amended Complaint could be read to allege that he was concerned as a citizen of the community unrelated to his job duties. Under *Garcetti* then, because Plaintiff's speech was

---

[4] Nowhere in his Amended Complaint does Plaintiff allege that any officer was committing fraud upon the public, or that any member of the general public was harmed as a result of how extra duty was assigned. He has not alleged, nor can he, that any officer did anything other than get a job in a manner inconsistent with the private contract rights between the Union and the City. Plaintiff claims that he was engaging in speech about the specific functions of his job and whether his predecessor was correctly doing that job.

related to his job duties as a police officer in charge of extra duty assignments, his speech is not afforded First Amendment protections. Since there could be no Constitutional violation, Police Chief Campbell cannot be liable under Section 1983 for depriving Plaintiff of his federally protected rights.

Many analogous cases within and outside this Circuit support the proposition that complaining of workplace practices, including alleged violations of union contracts, is speech pursuant to the employee's duties and not as a member of the public on a matter of public concern. *See Weintraub v. Board of Education of City of New York,* 593 F.3d 196, 201-202 (2d Cir. 2010) (filing a union grievance is an action related to one's employment and not undertaken as a citizen, because a citizen cannot lodge a union grievance*); Davis v. McKinney,* 518 F.3d 304, 313 (5th Cir. 2008) (when a public employee raises complaints or concerns related to his job duties up the chain of command, that speech is undertaken in the course of performing his job); *Matthews v. Lynch,* No. 3:07cv739 (WWE), 2011 WL 1363783 (D. Conn. April 11, 2011) (speech of state police officer relating to alleged corruption within Connecticut State Police and directed at the office of Connecticut Attorney General and New York State Police was not protected because speaker reported misconduct to the agencies to which he was supposed to report such misconduct); *Christopherson v. Poutsch,* No. CV 14-00152, 2015 WL 13662707, at *13 (D.N.M. Apr. 30, 2015) (employer's attempts to require teachers to attend mandatory training in contravention of the teachers' union contract constituted a grievance about internal departmental affairs or the terms of employment, and were not a matter of public concern); (*Daley,* 249 Conn. at 782-783 (complaints about "internal employment policies are not a matter of public concern.").

Because Plaintiff's allegations make clear that the speech about which he claims First Amendment protections was made about his employer's policies and was pursuant to his job duties, it has no First Amendment protections as a matter of law and Count Two should be dismissed.

**B.     COUNT ONE:  Conn. Gen. Stat. § 31-51q Against the City of New Haven**

      **1.     Conn. Gen. Stat. § 31-51q Protects Employees From Discipline or Discharge for Exercising Free Speech Rights Under the U.S. Constitution or the Connecticut Constitution.**

Connecticut General Statutes § 31-51q states that:

> Any employer . . . who subjects an employee to discipline or discharge on account of the exercise of such employee of rights guaranteed by the First Amendment to the United States Constitution or section 3, 4, or 14 of article first of the Constitution[5] of the state, provided such activity does not substantially or materially interfere with the employee's bona fide job performance or the working relationship between the employee and the employer, shall be liable to such employee for damages caused by such discipline or discharge.

Conn. Gen. Stat. § 31-51q. Section 31-51q "protects an employee from retaliatory discharge due to the employee's exercise of certain enumerated rights, including, *inter alia,* the right to freedom of expression as guaranteed by the first amendment to the United States constitution, and article first, § 4, of the Connecticut constitution." *Daley*, 249 Conn. at 778. "Those constitutional provisions safeguard statements made by an employee *that address a matter of public concern*, but provide no security with respect to statements that address wholly personal matters." *Id.* (internal citations omitted) (emphasis added).     In order to state a claim under Section 31-51q,  a plaintiff must allege that (1) he was exercising rights protected either under

---

[5] Article first, § 4, of the Connecticut Constitution states that, "Every citizen may freely speak, write and publish his sentiments on all subjects, being responsible for the abuse of that liberty." Article first, § 5, of the Connecticut Constitution provides that, "No law shall ever be passed to curtail or restrain the liberty of speech or of the press." Finally, the text of Article first, § 14, of the Connecticut Constitution states that, "The citizens have a right, in a peaceable manner, to assemble for their common good, and to apply to those invested with the powers of government, for redress of grievances, or other proper purposes, by petition, address or remonstrance."

the First Amendment to the United States Constitution or §§ 3, 4, or 14 under the constitution of

Connecticut; (2) he was disciplined or discharged by exercising these rights; and (3) the exercise

of these rights did not "substantially or materially interfere with [his] bona fide job performance

or with [his] working relationship with [his] employer." *Winik-Nystrup v. Manufacturers Life

Ins. Co.*, 8 F. Supp. 2d 157, 159 (D. Conn. 1998); *see also Lowe v. Amerigas, Inc.*, 52 F. Supp.

2d 349, 359 (D. Conn. 1999), *aff'd*, 208 F.3d 203 (2d Cir. 2000).

<blockquote>

a.     **To the Extent That Plaintiff's Section 31-51q Claim Relies on Alleged Violations of the First Amendment of the U.S. Constitution, Such Claims Must Be Dismissed Because Plaintiff Was Not Speaking as a Citizen on a Matter of Public Concern.**

</blockquote>

To the extent that Plaintiff claims that he was disciplined for was exercising rights

protected under the U.S. Constitution, such claims fail because his alleged speech was pursuant

to his official duties—as previously discussed in above. Under *Garcetti*, 547 U.S. at 421, "when

. . . employees make statements pursuant to their official duties, the employees are not speaking

as citizens for [f]irst [a]mendment purposes, and the [U.S.] Constitution does not insulate their

communications from employer discipline." For the reasons set forth at pp. 8-13, *supra*, since

Plaintiff himself alleges that he was acting pursuant to his job duties, his Section 31-51q claim

must be dismissed to the extent that it relies on federal Constitutional protections.

<blockquote>

b.     **To the Extent That Plaintiff's Section 31-51q Claim Relies on Alleged Violations of the State Constitution, Such Claims Must be Dismissed Under the Modified *Connick-Pickering* Test for Employee/Citizen Speech**

</blockquote>

For Section 31-51q claims based on free speech rights under Sections 3, 4, or 14 of the

constitution of Connecticut, the *Garcetti* test is not employed. Instead, the Court must employ

what is known as the modified *Connick-Pickering* balancing test. *See Trusz v. UBS Realty

Investors,* 319 Conn. 175 (2015).

In *Trusz,* the Connecticut Supreme Court concluded that the *Connick-Pickering* balancing test (as modified by Justice Souter in *Garcetti*) applies to speech by a public employee pursuant to the employee's official duties under the Connecticut constitution. Under this test, speech related to a public employee's job duties is not protected *unless* it "comment[s] on official dishonesty, deliberately unconstitutional action, other serious wrongdoing, or threats to health and safety." *Id.* at 204.

Here, Plaintiff does not allege any facts in his Amended Complaint[6] that would support that he commented on "official dishonesty, deliberately unconstitutional action, other serious wrongdoing, or threats to health and safety." The Amended Complaint does not and cannot plausibly state that the assignment of extra duty work harmed the public or that the work was not performed — only that he believes it was not being allocated in accordance with CBA provisions. Compl. ¶ 54. Because Plaintiff's allegations in Count Two do not satisfy the *Connick-Pickering* test, his claim under Section 31-51q should be dismissed to the extent it rests on a claim that he was disciplined for exercising his free speech rights under the Connecticut constitution.

### C.     COUNT THREE:   42 U.S.C. § 1983 (Hostile Work Environment) Against Police Chief Anthony Campbell

As set forth above, 42 U.S.C. § 1983 prohibits any person from depriving any individual of a federally protected right under color of statute, ordinance, regulation, or custom of any State. In Count Three, Plaintiff asserts that Police Chief Campbell deprived him of his right to be free from a "hostile work environment."

---

[6] Plaintiff alleges that he made a complaint to the CHRO and that the City was aware of this and retaliated against him for the complaint. However, the complaint filed with the CHRO, a copy of which is attached hereto as Exh. A, clearly shows that it was filed on May 18, 2018. This was *more than six (6) months after Plaintiff was disciplined* for his work in the Extra Duty unit and *nearly nineteen (19) months after Plaintiff was transferred out of the extra duty unit,* so neither of those actions could have been caused by the filing of the complaint.

1. **Count Three Fails to State a Claim on the Iqbal Twombly Pleading Standard**

Both in Count Three and throughout the Amended Complaint, Plaintiff alleges that he complained his predecessor had used "favoritism" in assigning extra duty work to police officers, and that when he took over his predecessor's position and assigned extra duty work in accordance with the CBA, other employees allegedly yelled at him, told him he'd better give them extra duty, and in one instance "brush[ed] against him." Compl. ¶¶ 24, 26, 27.

Count Three is directed only against Police Chief Campbell. Plaintiff claims that, "[b]y his knowledge of, and acquiescence to, the conduct of officers and supervisors yelling, assaulting, intimidating and threatening Plaintiff, Chief Campbell permitted the creation and maintenance of a hostile work environment *because of Plaintiff's strict adherence to standard operating procedures regarding extra duty work* and because he complained (including to the Commission on Human Rights & Opportunities) of the racially discriminatory transfer of staff from the extra duty unit." Compl. ¶ 81 (emphasis added). He further alleges that a "hostile work environment" *was "created and permitted to exist because of Plaintiff's engaging in conduct protected by the First Amendment to the United States Constitution and by Article First, Sections Three, Four and Fourteen, of the Connecticut Constitution." Id. ¶ 82. He does not allege in Count Three that he was subjected to a hostile work environment because of his race.

To allege a cause of action for a hostile work environment, a plaintiff must allege specific facts that would show that hostility toward him occurred because of the plaintiff's protected characteristic. *See Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 743 F.3d 11, 20 (2d Cir. 2014). "[I]t is axiomatic that mistreatment at work, whether through subjection to a hostile environment or through other means, is actionable under Title VII **only when it occurs because of an employee's . . . protected characteristic, such as race or national origin"** (internal

15

quotation marks, alterations, and citation omitted; emphasis added) *Id.*

Title VII of the Civil Rights Act prohibits discrimination in employment based on, among other things, race. There is no general cause of action for a "hostile work environment" under federal law outside of the protected categories set forth in Title VII and the Americans with Disabilities Act ("ADA"). *See Tiffany v. Dzwonczyk*, 696 Fed.Appx. 7, 8 (2d Cir. 2017) (affirming dismissal of hostile work environment claim where plaintiff "fail[ed] to allege any facts suggesting a relationship between the adverse actions and his membership in a Title VII protected class"); *Keaton v. State of Conn. Dept. of Rehabilitation Serv.*, No. 3:16-CV-1810, 2018 WL 1245728 *10 (D. Conn. March 9, 2018) (citing requirement of a protected characteristic for a hostile work environment claim). Because Plaintiff fails to allege facts to support that Police Chief Campbell deprived him of the right to be free of a *racially* hostile work environment, his claim in Count Three must fail.

### 2. Even if Plaintiff Had Alleged Conclusorily a Hostile Work Environment Based on Race, Count Three Should Be Dismissed Because He Presents No Facts That Could Rise to the Level of a Racially Hostile Work Environment

"Section 1983 and the Equal Protection Clause protect public employees from various forms of discrimination, including hostile work environment and disparate treatment . . . . Once action under color of state law is established, the analysis for such claims is similar to that used for employment discrimination claims brought under Title VII." *Patterson v. Cty. of Oneida, N.Y.*, 375 F.3d 206, 226 (2d Cir. 2004).

Here, even if Plaintiff had alleged that Police Chief Campbell deprived him of the right to be free of a *racially* hostile work environment, Count Three should still be dismissed because he fails to allege sufficient facts to support a hostile work environment claim based on race. To

16

establish a claim for a racially hostile work environment, a plaintiff must show that his work environment was "so severely permeated with discriminatory intimidation, ridicule, and insult that the terms and conditions of [his] employment were thereby altered." *Alfano v. Costello*, 294 F.3d 365, 373 (2d Cir. 2002) (quoting *Perry v. Ethan Allen, Inc.*, 115 F.3d 143, 149 (2d Cir. 1997)). In addition, "alleged incidents supporting a hostile work environment claim must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive." *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002) (internal citations and quotation marks omitted).

Plaintiff's Amended Complaint is clear that he alleges that he was subjected to a "hostile work environment" not because of his race, but because he "adhered to standard operating procedures regarding [the assignment of] extra duty work." *See* Compl. ¶ 81. The only reference he makes to race is that he allegedly complained of "racially discriminatory transfer of staff from the extra duty unit." Compl. ¶ 81. This is simply not enough to support a claim that Police Chief Campbell subjected Plaintiff himself to an environment permeated with discriminatory intimidation and ridicule based on his race such that the conditions of his employment were changed thereby.

Insufficient and conclusory allegations such as those in Count Three are simply not enough to survive a motion to dismiss. *See Twombly*, 550 U.S. at 570; *Tiffany v. Dzwonczyk*, 696 Fed. Appx. at 8; *Keaton v. Conn. Dep't of Rehab. Servs.*, No. 3:16-CV-1810, 2018 WL 1245728, at *8-9 (D. Conn. March 9, 2018) (plaintiff's allegations that she was given an unfairly negative performance evaluation, was threatened for refusing to sign the evaluation, was the only person in her office without access to a computer, was the object of excessive subjective discretion by her supervisor, was subjected to heightened scrutiny, and was denied promotional

opportunities, among other acts, were insufficient to state a hostile work environment claim); *Johnson v. Conn. Dep't of Admin. Serv. Bureau of Enterp. Sys. and Techn.*, 3:17-CV-00901, 2018 WL 306697, at \*6-7 (D. Conn. Jan. 5, 2018) (allegations against defendant Ruiz that he had cited plaintiff for an unauthorized absence, given him a negative evaluation, and denied him mentoring, along with plaintiff's failure to allege sufficient facts to establish Ruiz's "personal involvement" in a hostile work environment, resulted in dismissal of plaintiff's hostile work environment claim against this individual); *Williams v. New York State Unified Court System Office of Court Admin.*, 16-CV-2061, 2017 WL 4402562, at \*5-6 (S.D.N.Y. Sept. 30, 2017) (dismissing hostile work environment claims because, even if supported by discriminatory animus, allegations that plaintiff's subordinates "openly challenged" his authority, disregarded his directives, and complained to management, who, instead of remedying the situation, reprimanded plaintiff and tried to convince him to relinquish his supervisory authority, were insufficient to support a hostile work environment claim); *Hughes v. Xerox Corp.*, 37 F. Supp.3d 629, 646-47 (W.D.N.Y. 2014) (hostile work environment claim dismissed where plaintiff alleged that her co-workers made racist comments on a "sympathy" card posted in an employee kitchen area, that her white supervisor undermined her in front of her direct reports, that she was excluded from meetings, that her supervisor took away her work duties and made negative comments about her career prospects, and that other employees complained falsely about her being "intimidating").

In fact, where a claim provides no factual support but is based on wholly conclusory allegations, as in the present case, "it is appropriate to grant defendants['] motion to dismiss." *Scott v. Town of Monroe*, 306 F. Supp. 2d 191, 198 (D. Conn. 2004); *see also Iqbal*, 556 U.S. at 678 (to survive a motion to dismiss, plaintiff must set forth "sufficient factual matter . . . to state

a claim to relief that is plausible on its face").[7]   In the Amended Complaint, there are simply no factual allegations in Count Three to support a claim that Defendant Campbell deprived Plaintiff of his federally protected rights under Title VII to be free from a hostile work environment based on Plaintiff's race.[8]

To the extent that Plaintiff tries to bootstrap a claim of free speech as the basis for the hostile work environment claim in Count Three through Section 1983, it is duplicative of his arguments in Counts One and Two, in addition to being insufficient to support a Section 1983 claim based on a racially hostile work environment.  For this reason, and because Plaintiff fails to state a claim of deprivation of federally protected rights under Section 1983 through a "hostile work environment," Count Three should be dismissed.

### D.    COUNT FIVE:  42 U.S.C. § 1983 (Race Discrimination) Against Police Chief Anthony Campbell

Race discrimination in employment may be actionable under Section 1983 and brought by a person who is a Title VII plaintiff so long as the Section 1983 claim is based on a distinct violation of a constitutional right.  *See Patterson v. County of Oneida*, 375 F.3d 206, 225 (2d Cir. 2004).  "Most of the core substantive standards that apply to claims of discriminatory conduct in violation of Title VII are also applicable to claims of discrimination in employment in violation

---

[7]   The plausibility standard does not impose an across-the-board, heightened fact pleading standard. *See Boykin v. KeyCorp*, 521 F.3d 202, 213 (2d Cir. 2008).  However, it does impose on the plaintiff the burden to make factual allegations supporting a claim for relief. As the Court explained in *Iqbal*, it "does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (alterations, citations, and internal quotation marks omitted).  In the Second Circuit, the plausibility standard is "flexible," obliging the plaintiff "to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible." *Boykin*, 521 F.3d at 213

[8]   Because facially neutral claims of a hostile work environment that do not touch upon a protected class fail as a matter of law, Count Three is insufficient. *See Moore v. Mara*, Civil No. 3:08cv1946 (AWT) (D. Conn.) (Sept. 7, 2011) (granting summary judgment where facially neutral claims were insufficient); *Grey v. City of Norwalk Bd. of Educ.* 304 F.Supp.2d 314 (2004) (a basis must exist for inferring that the conduct occurred because of the membership in a protected class).

of . . . the Equal Protection Clause [under Section 1983]." *Id.* However, "a § 1983 claim, unlike a Title VII claim, can be brought against individuals," *Demoret v. Zegarelli*, 451 F.3d 140, 149 (2d Cir. 2006), and "a plaintiff pursuing a claimed . . . denial of equal protection under § 1983 must show that the discrimination was intentional." *Patterson*, 375 F.3d at 226.

Here, Plaintiff claims in Count Five that Police Chief Campbell deprived him of his federally protected rights by allowing him to be "transferred out" of the extra duty unit. *See* Compl. ¶ 81.

### 1. Plaintiff's Alleged "Transfer" Was Not an Adverse Action

Title VII prohibits employers from discriminating against any employee with respect to "compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. 2000e-2(a)(1). To survive a motion to dismiss, a complaint must present sufficient non-conclusory factual allegations that raise a plausible claim for relief. *Iqbal*, 556 U.S. at 678. This entails alleging facts that plausibly demonstrate the essential elements of discrimination, i.e., that the plaintiff suffered an adverse employment action due to the defendant's intentional discrimination on the basis of a protected status. *Mabry v. Neighborhood Defender Service*, 769 F. Supp. 2d 381, 392 (S.D.N.Y. 2011).

The Second Circuit "define[s] an adverse employment action as a 'materially adverse change' in the terms and conditions of employment." *Sanders v. New York City Human Res. Adm'r*, 361 F.3d 749, 755 (2d Cir. 2004). "To be materially adverse, a change in working conditions must be more disruptive than a mere inconvenience *or an alteration of job responsibilities*." *Id.* (internal quotation marks omitted; emphasis added). "Examples of such a change include 'termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material

responsibilities, or other indices . . . unique to a particular situation.'" *Id.*; *see also Dragon v. Connecticut*, 211 F. Supp. 3d 441 (D. Conn., 2016) (dismissing case upon finding no materially adverse change in terms of employment despite satisfying initial racial discrimination thresholds); *Adams v. Yale-New Haven Hospital,* No. 12-4279-cv, 2012 WL 4443992 (D. Conn., Sept. 25, 2012), *aff'd*, 558 Fed. Appx. 72 (2d Cir. 2014) (granting summary judgment because plaintiff's transfer was not an adverse employment action); *Fairbrother v. Morrison*, 412 F.3d 39, 56 (2d Cir. 2005) (transfer without a change in conditions of employment is only a mere inconvenience or alteration of job responsibilities and hence not materially adverse); *Williams v. Donnelly, Corp.*, 386 F.3d 123, 128 (2d Cir. 2004) (fact that an employee views a transfer either positively or negatively does not render the denial or receipt of the transfer as an adverse employment action).

Plaintiff has alleged in Count Five that he and two other African-American employees were "transferred" out of the extra duty unit, and that as a result his job duties changed. Compl. ¶ 82. The Amended Complaint does not allege that he suffered any financial hardship, loss of pay, loss of title, or any other loss as a result of the change in his responsibilities (i.e., that he no longer assigned extra duty work). His claim of discrimination through this alleged "transfer"/change in his duties simply does not satisfy the requirement to allege facts sufficient to support the elements of a cause of action for discrimination, including that he suffered an adverse employment action.

Consistent with case law holding that mere transfers or changes in duties are not adverse employment actions, Count Five should be dismissed because Plaintiff has failed to state a claim upon which relief may be granted.

### 2. Plaintiff's Discipline Has No Plausible Connection to Race

As for Plaintiff's claim in Count Five that he was "later disciplined," the Amended Complaint states that Plaintiff was disciplined two times. To the extent that he may argue this discipline was an adverse employment action, Count Five also must fail because his allegations directly contradict that this "discipline" was based on his race. First, he alleges he was given a 15-day suspension after an Internal Affairs investigation found that he had not followed expected procedures in hiring practices, and that the "allegations of misconduct made against [him] were as a direct result of his strict adherence to the standard operating procedures for the assignment of extra duty work." Compl. ¶¶ 66, 67. Later, he claims there was a second Internal Affairs investigation related to his apprehension of a criminal suspect, and that he was suspended for another 20 days as a result of that investigation. Compl. ¶¶ 68-77. He claims that the allegations of misconduct related to this second investigation and the Internal Affairs "decision to find him guilty . . . were [also] as a direct result of his strict adherence to the standard operating procedures for the assignment of extra work." Compl. ¶ 73. These are the only two disciplinary actions Plaintiff alleges. The Amended Complaint contains no facts whatsoever that would support that these disciplinary actions were based on Plaintiff's race. In fact, to the contrary, Plaintiff's own allegations state that these disciplinary actions were taken because of how he was handling the assignment of extra duty work.

Plaintiff's vague and conclusory reference to being "later disciplined" in Paragraph Five is not sufficient to assert a plausible claim that Police Chief Campbell used the power of the State to deprive Plaintiff of his right to be free of race discrimination. For this reason, Count Five also should be dismissed for failure to state a claim upon which relief may be granted.

## V.     CONCLUSION

For all of the foregoing reasons, defendants the City and Policy Chief Campbell respectfully request that the Court grant the Defendants' Motion to Dismiss Counts One, Two, Three and Five of the Amended Complaint.

Dated at New Haven, Connecticut this 8th day of November, 2018.

Respectfully submitted,

*/s/ Lori B. Alexander*

Lori B. Alexander (ct08970)
Christopher M. Neary (ct28738)
LITTLER MENDELSON, P.C.
One Century Tower
265 Church Street, Suite 300
New Haven, CT  06510
Telephone: 203.974.8700
Facsimile: 203.974.8799
lalexander@littler.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 8th day of November, 2018, a copy of the foregoing was filed electronically and served on anyone unable to accept electronic filing. Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF system.

*/s/ Lori B. Alexander*
Lori B. Alexander

# Exhibit A



STATE OF CONNECTICUT
OFFICE OF PUBLIC HEARINGS
450 Columbus Boulevard, Ste 2.
Hartford, CT 06103

CHRO - OPH

2018 MAY 18  FR

OFFICE (860) 418-8770
FAX (860) 418-8780

## WHISTLEBLOWER RETALIATION COMPLAINT FORM
Pursuant to General Statutes §4-61dd
No. OPH/WBR **2018-3**
*[to be assigned by OPH]*

INSTRUCTIONS: The complainant or her/his authorized representative shall complete and sign this form and then file it in duplicate with the Chief Human Rights Referee, at the address listed above. A complaint must be filed with the Office of Public Hearings (OPH) not later than ninety (90) days after the complainant learns of the specific incident giving rise to this claim (i.e., an adverse personnel action or threat of such action). Once the complaint is filed, the Chief Human Rights Referee will issue a "Notice of Hearing and Initial Conference" scheduling an initial conference.

| 1. Complainant (employee) Contact Information: | 2. Name and Address of Complainant's representative, if any: * |
|---|---|
| Name - **Robert Hayden** | Juris No.. (if representative is an attorney) - |
| Add 1 - | Name - |
| Add 2 - | Address 1 - |
| City - | Address 2 - |
| State - **CT**  Zip code - **06405** | City - |
| Tel No. - | **PRIVACY REDACTION**  Tel No. - |
| Fax No. - | Fax No. - |
| Email - | Email - |

*(Note: Neither the CHRO nor the Office of Public Hearings provides an attorney for the complainant.)*

3 . The Respondent (the Complainant's employer) is --

_____ (a) a State department/agency ;  _____ (b) a quasi-public agency (as listed in General Statutes § 1-120)[1];

_____ (c) a large state contractor (i.e., an entity that has a contract with a State Department/Agency or quasi-public agency valued at $5 million dollars or more); or  _____ (d) an appointing authority.

*(Check the appropriate box listed above. Under Conn. Gen. Stat. § 4-61dd the Office of Public Hearings has jurisdiction to hear whistleblower retaliation cases file against the entities described in 3(a) through 3(d)*

4. Respondent (Employer) Contact Information - Entity against whom you are filing this complaint.

Agency/Contactor - **New Haven Police Dept**
Addr1 - **One Union Ave**
Addr2 -
City - **New Haven**  State - **CT**  Zip - **06511**
Tel. - **203 946 6333**  Fax -
Email -

5. Complainant's initial date of employment with Respondent. **October 2002**
6. Present employment status. **Currently employed by the NHPD**

---

[1] Conn. Gen. Stat. § 1-120 states, "[a]s used in sections 1-120 to 1-123, inclusive: (1) 'Quasi-public agency' means the Connecticut Development Authority, Connecticut Innovations, Incorporated, Connecticut Health and Educational Facilities Authority, Connecticut Higher Education Supplemental Loan Authority, Connecticut Housing Finance Authority, Connecticut Housing Authority, Connecticut Resources Recovery Authority, Capital Region Development Authority, Connecticut Lottery Corporation, Connecticut Airport Authority, Health Information Technology Exchange of Connecticut and Connecticut Health Insurance Exchange."
(Form Revised 7/29/13)

7. You may be protected from adverse personnel actions or threats of adverse personnel actions for your disclosure of information described in Conn. General Statutes §4-61dd(a). CHECKING ALL APPLICABLE CATEGORIES.

A. The complainant's underlying whistleblower disclosure concerned matters involving:

   i. With regard to a state or quasi-public agency: ✗corruption; ✗unethical practices; ___violation of state, laws/regulations; ___ mismanagement; ✗abuse of authority; ___ gross waste of funds; ___danger to the public safety.
   OR
   ii. With regard to a large state contract: ___corruption; ___violation of state or federal laws/regulations; ___gross waste of funds; ___abuse of authority; ___danger to the public safety.

B. State the name and position of the qualifying person(s) to whom you disclosed such information and the date of such disclosure.[2] *(Attach additional page(s) if necessary.)*

   Police Chief Anthony Campbell, Police union President Craig Miller

C. Describe the information that you disclosed. *(Attach additional page(s) if necessary.)*

   I exposed corruption within the extra duty office which is responsible for allocating money (in the form of Jobs worked) to police officers.

8(A). On what date did you learn about the personnel action(s) threatened or taken against you because of the information you disclosed in 6.C. above? **Feb 21, 2018**

8(B). Briefly describe the personnel action(s) threatened or taken against you. Identify all pertinent dates, locations, and individuals involved. *(Attach additional page(s) if necessary)*

   Unjustified suspension days. The police union is refusing to allow me to go before the board of police commissioners, because the union President is involved in the corruption.

9. If you have filed a complaint/appeal regarding the personnel action(s) in any other forum (for example, in state court, with the Employees Review Board, or through a union grievance), please provide dates and pertinent details and attach a copy of that complaint/appeal. Please see attached papers

10. Statement of damages available pursuant to Conn. Gen. Stat. § 4-61dd (For example, reinstatement to former position, back pay, reestablishment of employee benefits, reasonable attorney's fees )

   15 Days of Suspension, Had to use 3 weeks of my vacation time to attempt to off set the financial loss.

11. Signature and Oath of Complainant or Authorized Representative: By signing this form, the complainant states that s/he has read the foregoing complaint and knows the content thereof; that the same is true of her/his own knowledge, and that s/he believes the same to be true.

Signature - _____     Date Signed - **5/18/18**

---

[2] According to General Statutes §4-61dd(b)(1), the disclosure must be made to one of the following - (i) to an employee of the Auditors of Public Accounts or the Attorney General; (ii) to an employee of the state agency or quasi-public agency that employs the person who retaliated against you or threatened retaliation; (iii) to an employee of a state agency pursuant to a mandated reporter statute; or (iv) in the case of a large state contractor, to an employee of the contracting state agency concerning information involving the large state contract.